Hitchcock, J.
The controversy in this case is between a mortgagee or the assignee of a mortgagee and judgment creditors, as to which has the prior lien upon the premises named in the pleadings. The defendants, Mendenhall, and Petrie & Root, recovered judgments against Hutchinson, Bingham & Co. on the 30th April, 1839, which were liens on these premises. At this time there was no other incumbrance than the mortgage to the Tenth Ward Bank. That mortgage having been declared fraudulent and void by a decree of this Court, these judgments operate as a lien preferable to the mortgage of the bank of Cleveland of the 15th of May, 1839. The complainant having, as the assignee of this last mortgage, procured a decree for the sale of the mortgaged premises, and having at the sale purchased them in, now seeks to avoid the prior liens of the judgment creditors in a variety of ways.
The first ground upon which he seeks to produce this effect •is, by setting up the mortgage to the bank of Cleveland, which was released the 10th of April, 1839, for the reason that the release was procured by fraud. It is not pretended, at least in argument, that there was any fraud on the part of Hutchinson, Bingham & Co. to whom the release was executed. The only fraud imputed is to the Tenth Ward Bank. This question must be settled by the evidence in the case.
The testimony is not voluminous, and relates principally to transactions which transpired in April and May, 1839, relative to the mortgage referred to in the bill. From this testimony it appears that Hutchinson, Bingham & Co., in 1838 were indebted to the bank of Cleveland in the sum of nineteen thousand dollars and more, to secure the payment of which, they ex *584 ecuted a mortgage to the bank on what is called in the pleadings the “ Stone Mill property.” Hutchinson, Bingham & Co. had property in the city of Cleveland which is denominated in the bill, the “ Ware Hoúse property.” In the first part of April, 1839, there were outstanding judgments which were liens, upon this “Ware House property,” and H., B. & Co. being anxious to relieve it from these incumbrances, and to carry on their business, applied to the bank of Cleveland for assistance. They supposed that they might procure money at the East upon the pledge of real estate, provided the same was unincumbered, and the Tenth Ward Bank was spoken of as an institution in operation or about to go into operation, from which such money might be obtained. The Bank of Cleveland was anxious to obtain payment of the debt from Hutchinson, Bingham & Co., and was willing to assist them, if by so doing they would eventually receive such payment and re ceive it at an earlier period than payment could be enforced by proceeding upon the mortgage. Eventually an arrangement was made, by which the Bank of Cleveland agreed to make an additional advancement of ten thousand dollars with which the incumbrances upon the “Ware House property” were to be removed ; also to release their mortgage upon the “ Stone Mill property,” Hutchinson, Bingham & Co. agreeing to pay to the bank of the money which they might obtain by a pledge of the same property, twenty thousand dollars, and to execute another mortgage upon the “ Stone Mill property ” and the “Ware House property” to secure the balance that would still remain due. This latter mortgage however to be subordinate to any lien PI., B. & Co. might create upon the property in effecting a loan at the East.
It is claimed by the complainant that there was an express agreement, that no mortgage should be made by H., B. & Co., unless upon the loan and receipt of at least twenty thousand dollars. Upon this point the testimony is not clear, but leaves it doubtful whether there was any such agreement, although it is manifest that the Bank of Cleveland would not have entered *585 into the arrangement, but for the expectation of receiving that amount of money. In consequence of this arrangement, in the early part of April, 1839, the ten thousand dollars were ced, the incumbrances removed, and the mortgage of 1838 released. A new mortgage was executed upon both pieces of property by H., JB. & Co., and forwarded to Bingham, who was then in New York, attempting to negotiate a loan. He found, however, that this could not be effected with the Tenth Ward Bank, except by taking stock, and then pledging the stock to secure the payment of the loan, but there was some difficulty about the mo'rtgage and other papers which he had received, and he returned to Cleveland. When at Cleveland, he procured the necessary alterations in the mortgage and other papers, and as he thinks, informed the officers of the Bank of what he had done, and of the only mode by which he expected to procure money. After which he returned to New York, completed the arrangement with the Tenth Ward Bank, took thirty-five thousand dollars of its stock, and as collateral security for its payment, delivered the mortgage upon the “ stone mill property,” and the “ ware house property,” in Cleveland. Having done this, he proposed to borrow twenty-five or thirty thousand dollars upon a pledge of this stock. The Bank, however, refused the loan, and in fact was not in a situation to make it. This transpired the latter part of April, or early in May. The mortgage to the Tenth Ward Bank was recorded on the 23d of April, 1839, and on the 30th of the same month the judgments of the defendants were rendered. The Tenth Ward Bank eventually, and as part of the original agreement, agreed to loan H., B. & Co. twenty thousand dollars, upon the pledge of twenty-five thousand dollars of stock, five thousand to be advanced as soon as the Bank should commence discounting, and five thousand at the end of each fifteen days thereafter. . It was then expected that the Bank would commence discounting on the first of July next following. After making this last arrangement, Bingham returned to Cleveland, and informed the officers of the Bank of Cleveland of what he had done, and of his pros *586 pects. The officers were disappointed and expressed dissatisbut eventually took a mortgage on the before mentioned in Cleveland, to secure the indebtedness of H., B. & Co., to the Bank, and also received the stock of the Tenth Ward Bank as further security. In July following, Bingham received $12,500 of this stock from the Bank of Cleveland and took it to Ne.w York, expecting to pledge the same for ten thousand dollars, part of the loan agreed upon. The Bank, however, had not yet got into operation, and he left the stock with Lane Schuyler, to hand the same over to the Bank, and to receive the money, when the Bank should commence discounting. Schuyler subsequently received upon a pledge of this stock, $6,500, in money, and $3,500 in stock; but no part of the money ever came to the possession of H., B. & Co., or of the Bank of Cleveland, Schuyler claiming the right to apply it upon claims which he had or pretended to have upon H., B. & Co.
By a decree of this Court, heretofore rendered, the mortgage to the Tenth Ward Bank has been declared to be fraudulent and void.
Upon examination of this testimony, I do not find that the Tenth Ward Bank had any communication with the Bank of Cleveland upon this subject, nor is there any pretence that it held forth any inducements to the latter to procure it to execute this release. In fact, the release itself was executed before any arrangement was made with the Tenth Ward Bank. In all the transactions relative to this business, the Bank of Cleveland contracted alone with H., B. & Co., and H., B. & Co., with the Tenth Ward Bank. The fraud of the Tenth Ward Bank, so far as there was any fraud, was upon H., B. & Co. The Bank of Cleveland undoubtedly suffered in consequence of this fraud; not however, from giving any credit to assurances made to it, by the Tenth Ward Bank, but from giving credit to the assurances and promises of H., B. & Co. The consideration for which the release was executed failed. Or rather, the expectations which induced the execution of the release were never realized, and probably at the time Bingham returned to Cleveland, in *587 April, and informed the officers of the Bank that he could effect ,a loan in no other way than by the purchase of stock, they might by instituting proceedings, have compelled the of a new mortgage, or have avoided the release. Possibly this might have been done, upon his return in May with the stock of the Tenth Ward Bank.
This, however, was not attempted. On the contrary, the Bank of Cleveland took a new mortgage, and also as additional security, $35,000 of the stock of the Tenth Ward Bank. Thereby affirming, instead of disaffirming, what H., B. & Co. had done. And no attempt was- made to avoid the release. Neither did the complainant, who upon the sale of the assetts of the Bank of Cleveland, became the assignee of the debt due from H., B.' & Co., attempt to set up the mortgage of 1838, but filed his bill to foreclose the .mortgage of 15th May, 1839, procured a decree, and had the premises sold under that decree. Under these circumstances, after this apparent acquiescence, and after this delay, it seems to the Court that it is now too late to attempt to avoid the release and set up the mortgage of 1838.
The next ground upon which the complainant attempts to waive the prior lien of these judgment creditors, is that he is a purchaser of judgments which were junior, in point of time, to the judgments of the defendants, but upon which executions were issued, and levied upon said premises. The facts appear to be these. On the 12th of-May, 1840, the Commercial Bank of Lake Erie recovered a judgment against H. B. & Co., for the sum of $4,848 04. An execution was issued and levied upon the premises, July 10th, 1845. After the-levy was made, the complainant purchased in this judgment, as he says, bona fide, “ and for value.” The amount of this value is not stated. In like'jmanner, a judgment was recovered in Summit county in February, 1845, by Hannah Hutchinson, against AmosS. Hutch inson, one of the firm of H., B. & Co. Execution was issued and levied upon the premises, and on the second of September, 1845, this judgment was purchased in by the complainant. At *588 the time these judgments were purchased in, the complainant had a bill depending to foreclose the mortgage of the 15th May, 1839. Here is an attempt to tack junior judgments to a mortgage, in order to overreach a judgment which has a prior lien to the mortgage.
As this principle of tacking has never been recognized, under our jurisprudence, I suppose that the complainant, as the assignee of these judgments, is placed in no better situation than would be the creditors themselves. Now the rights of creditors and mortgagees, under such circumstances, as in the present case, are settled by this Court in the case of Brazee et al v. Lancaster Bank, 14 Ohio Rep. 318, in which it was decided that “ as between an older judgment, not sustained by levy within the year, an intervening mortgage, and a junior judgment, sustained by levy, the older judgment must be first satisfied.” The same principle has been recognized and affirmed in subsequent cases.
The next and last cause for relief is, that the complainant, after having purchased in the premises, under his decree for the sale thereof, caused an execution to be levied on the premises, to satisfy the balance due upon the decree, after the first sale. The facts are, the defendant, at the September Term of this Court, 1845, obtained a decree finding due to him $43,209 60, and ordering, in default of payment, the sale of the mortgaged premises, and that execution issue for the surplus, if any, after such sale. The premises were sold, and purchased in by the complainant,!;at $30,009 60, leaving a balance due upon the mortgage of $13,009. To collect this balance, an execution was issued, at the suit of complainant, and levied on the same premises, which were already his, by previous purchase. This levy was made on the 23d of July, 1846, and by virtue of it, complainant claims that he occupies the situation of a junior judgment, sustained by levy within the year. There is some ingenuity, and certainly entire novelty, in this effort to defeat prior judgment liens. But there is one difficulty in the way. It was the duty of the complainant to have made these judg *589 ment creditors parties to his bill for foreclosure; and not having done so, their rights are not affected by his decree, in ever shape he may place it. If they had been made lipón the sale of the premises, the Court would have directed, in the distribution of the avails, that their judgments should have been first satisfied. It was their right to have them first satisfied, and they are not to be deprived of that right, in consequence of the neglect of the complainant to give them notice, by making them parties to his bill for a foreclosure.

1till dismissed.